Commonwealth *v.* Hallowell, Appellant.

222

Argued November 24, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Louis Lipschitz*, for appellant.

*Louis A. Perez, Jr.,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 12, 1971:

Appellant William Hallowell was tried separately for two murders in 1947, and in each case he was found guilty of murder in the first degree and sentenced to life imprisonment. Before us today is a direct appeal from these judgments of sentence. Upon reviewing the record, we hold that appellant must be afforded new trials by virtue of the introduction into evidence in each case of an involuntary incriminating statement.

The facts for the most part are not in dispute.

Around midnight on the evening of April 22, 1947, appellant stole an automobile parked in front of 477 Locust Avenue in Philadelphia, Pennsylvania. Approximately a half an hour later he was observed searching the stolen vehicle in the 4900 block of Smedley Street by Mrs. Margaret Curren. Being suspicious of appellant's behavior, she summoned the police, and officers Anderson and Hewitt responded to her call. As these two officers approached the scene, appellant sped away in the car. Anderson and Hewitt, at first alone and later joined by other police cars, gave chase over a distance of six miles. During this period a number of shots were fired but no one was injured.

The automobile chase ended when the vehicle driven by appellant failed to negotiate a turn. He immediately abandoned it and attempted to flee on foot. By this time numerous police cars had arrived at the intersection. Anderson and Hewitt continued pursuit in their squad car, while Officers Quigley and McGinty

ran after appellant on foot. Moments later Anderson and Hewitt alighted from their car and joined their fellow officers. Appellant fired several shots at his pursuers, and the police returned the fire. In the course of this exchange, Officer Hewitt was fatally shot.

Immediately thereafter, Officer Quigley overtook appellant and both of them engaged in a violent hand to hand struggle. By the time other officers succeeded in parting the pair, it was discovered that Quigley had also been fatally shot. The bullet was never recovered.

Appellant was taken to the hospital with three bullet wounds in his back and one each in his right arm and shoulder. He had also been bludgeoned with a blackjack by at least two other officers. At the hospital, approximately a half hour after his arrest and while being given medical treatment for his several wounds, appellant was interrogated by Detective Thomas McDonald. Appellant admitted to McDonald having stolen the car and, in addition, confessed to the commission of eight unrelated armed robberies, burglaries and larcenies between December 2, 1946 and April 16, 1947.

Appellant was indicted in due course and tried separately for the killings of Officers Quigley and Hewitt. At each trial he took the stand as a witness in his own behalf and admitted stealing the car. He testified that he slowed down as the police first arrived but then sped away when he was fired upon without provocation or any warning to stop. According to appellant, he then shot twice in an attempt to disable the police car but without any intent to injure the officers. He claimed that when his car was forced to stop he wanted to surrender peacefully but was not given any opportunity to do so. He admitted that he fired several times in an attempt to force his pursuers to take cover but again insisted that he had no intention to kill or injure any

of them. As to Officer Quigley's death, appellant claimed that his gun discharged accidentally while Quigley was attempting to disarm him.

At the conclusion of both trials, appellant was found guilty of murder in the first degree and sentenced to life imprisonment. He took no direct appeal but in July of 1968 filed a petition for relief pursuant to the Post Conviction Hearing Act[1] alleging, inter alia, a denial of his right to a direct appeal. Thereafter appellant was permitted to file post-trial motions as if timely filed. Argument on the motions was heard on April 11, 1969, and relief denied on June 6, 1969. This appeal followed.

Although appellant's trials antedate the United States Supreme Court's decisions in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), and *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964), it has always been recognized that the introduction into evidence of an involuntary confession violates due process. See, e.g., *Crooker v. California,* 357 U.S. 433, 78 S. Ct. 1287 (1958); *Gallegos v. Nebraska,* 342 U.S. 55, 72 S. Ct. 141 (1951); *Ashcraft v. Tennessee,* 322 U.S. 143, 64 S. Ct. 921 (1944); *Lisenba v. California,* 314 U.S. 219, 62 S. Ct. 280 (1941). This is so "even though there is ample evidence aside from the confession to support the conviction." *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 156, 239 A. 2d 426, 433 (1968).

There is of course no single litmus-paper test for determining constitutionally impermissible interrogation. Rather, the ultimate test of voluntariness is whether the confession is the product of an essentially free and unconstrained choice by its maker. "If it is, if he has willed to confess, it may be used against him.

[1] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 et seq.

If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 1879 (1961). Thus we must consider the totality of the circumstances, including the accused's mental and physical condition. *Commonwealth v. Holton,* 432 Pa. 11, 17, 247 A. 2d 228, 231 (1968).

Upon this present record, we can only conclude that appellant's hospital confession to Detective McDonald was involuntary. The uncontroverted facts are that appellant had been shot five times and blackjacked into submission on the street by at least two police officers. Moreover, appellant himself testified that he had been pistol whipped about the head while being transported to the hospital by the police, and the Commonwealth made no attempt whatsoever to contradict this testimony. Against this violent background, the incriminating statements were elicited from appellant in the hospital accident ward a scant thirty minutes after his arrest.

With laudable frankness, the Commonwealth concedes in this appeal that "the present state of the record would indeed render a finding of voluntariness difficult." We are nevertheless urged not to grant any relief on the ground of involuntariness inasmuch as that issue was not raised by appellant at the time of his trials. This argument is misplaced.

We have made it quite clear that the issue of the admissibility of a confession is cognizable not only in cases where a specific objection was made to the incriminating statements, but also in cases in which voluntariness was "an issue under the evidence," *Commonwealth ex rel. Gaito v. Maroney,* 416 Pa. 199, 203, 204 A. 2d 758, 759 (1964), or in which "recognizable evidence of involuntariness" has been offered sufficient to

alert the trial court as to the existence of the issue. *Commonwealth ex rel. Fox v. Maroney,* 417 Pa. 308, 313, 207 A. 2d 810, 813 (1965). See, e.g., *Commonwealth ex rel. Linde v. Maroney,* 416 Pa. 331, 206 A. 2d 288 (1965), in which the question of voluntariness was considered by this Court on appeal even though the defendant had registered only a general unspecified objection to the admission of his incriminating statement and had testified at trial that he had no specific recollection of the circumstances attending the utterance.

The circumstances surrounding the utterance of appellant's hospital statements, taken together, would preclude any finding that those statements were the product of an essentially free and unconstrained choice, and as the statements were introduced into evidence at both trials, neither of appellant's convictions can stand.[2]

Accordingly, the judgments of sentence are reversed and new trials granted upon both indictments.

Mr. Justice COHEN took no part in the decision of this case.

_____

[2] Appellant advances numerous other reasons as to why he should be granted new trials. With respect to his trial upon Bill No. 191, he claims that the trial court erred in failing to instruct the jury of the limited purpose for which it might properly consider the Commonwealth's evidence of his prior unrelated criminal acts and in giving a faulty and confusing instruction regarding the presumption of intent to kill which arises from the firing of a gun at a vital part of another human body. With respect to Bill No. 192, appellant contends that the trial court erred in charging the jury that it was irrelevant who fired the fatal shot. With respect to *both* trials, appellant asserts that the introduction of evidence of his prior unrelated criminal acts constituted a per se violation of due process and that the trial court erred in not submitting to the jury the question of the voluntariness of his hospital statements and in exhibiting bias against the defense in the presence of the jury. Because we are awarding new trials on other grounds discussed above, we need not and do not pass upon any of these other asserted errors.

Mr. Justice JONES would not grant new trials but would instead remand for evidentiary hearings in both cases.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The grant of a new trial to this hardened criminal who was convicted of two murders way back in 1947 will, realistically—because of the death of witnesses or the inability to locate them, or their inability to recall in detail exactly what had happened 25 years ago—set this murderer free. To me, this is incomprehensible!

Proof of defendant's guilt of these two murders was so overwhelming, that his confession of armed robberies, burglaries and larcenies could not have affected the jury's verdict in these frightful murders. Moreover, defendant-appellant admitted that he shot at the officers several times but claimed he had no intention to kill any of them. As to Officer Quigley whom he shot and killed, defendant testified "that his gun discharged accidentally* while Quigley was attempting to disarm him." Furthermore, the Majority have overlooked the well-established law that a jury can believe or disbelieve all or a part or none of what a defendant or a witness says: *Commonwealth v. Carroll*, 412 Pa. 525, 194 A. 2d 911; *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A. 2d 108; *Commonwealth v. Chermansky*, 430 Pa. 170, 242 A. 2d 237.

———

* About the only things defendant forgot to allege was that his confession was not voluntarily, knowingly and intelligently made and that he was and always had been some kind of a psychotic with a small I.Q. and that he was incapable of forming an intent, or knowing what he was doing, or that he blacked out and could not remember anything, or that his counsel was ineffective, or that both the district attorney and the trial Judge violated several provisions of the Constitution or committed many prejudicial errors which necessitated a new trial or a discharge.

The evidence proved—and the totality of the facts demonstrated—defendant's guilt of these two murders, not merely beyond a reasonable doubt, but beyond any possible or even any imaginable doubt. See *Commonwealth v. Carroll*, 412 Pa., supra.

The grant of a new trial in cases such as this evidences, inter alia, three things—(1) why the Courts have a colossal, overwhelming and constantly increasing backlog of cases, (2) why crime is sweeping our Country like a tidal wave, because there is no quick and certain punishment and no effective deterrent to crime, and (3) why recent Court-created, unrealistic, pro-criminal legal technicalities, which are made of Judicial straw* and then often applied retroactively, merely serve to delay, impede, impair and make a mockery of Justice.

I very vigorously dissent.

---

\* See the dissenting Opinions of many Justices of the Supreme Court of the United States.