398 A.2d 690
**COMMONWEALTH of Pennsylvania**

v.

**Eugene HUNT, Appellant.**

Superior Court of Pennsylvania.

Submitted June 27, 1978.

Decided Feb. 23, 1979.

---

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CER-
CONE, PRICE, VAN der VOORT, SPAETH and HESTER,
JJ.

HESTER, Judge:

Appeal is taken from the judgment of sentence imposed
following appellant's conviction of two counts of aggravated
assault, criminal conspiracy, and possession of instruments
of crime. The sole issue in this appeal is whether the
statement taken from appellant prior to trial was obtained
in a voluntary manner. We hold that it was and will
therefore affirm.

On the evening of September 13, 1976 at approximately
7:30 p. m., complainants Fryson and Mitchell were at their
home at 4210 Wyalusing Avenue in Philadelphia. Appellant,
accompanied by an unidentified man, rang the doorbell and
asked for a "fictitious name." T.T. 4/26/77, p. 14. When
Fryson indicated he did not know the person to whom
appellant was referring, appellant produced a sawed-off
shotgun and said, "I have one." id. Fryson pulled a knife
and stabbed appellant, who responded with a volley of shots
wounding Fryson and Mitchell in the head. As appellant
and his confederate fled, Fryson called the police, who
accompanied the two victims to Presbyterian Hospital.

A short time later, as Fryson was standing in the hospital
trauma ward speaking with the police, appellant entered the
room, seeking treatment for his wounds. Fryson immedi-
ately pointed him out as his assailant, whereupon appellant
was arrested and placed in a room in the emergency ward
for medical attention.[1] He was visited at 10:15 p. m. by
Detective Nespoli of the Philadelphia Police Department,
who asked appellant his name, address, and date of birth.
id. p. 58. Three and one-half hours later, the detective again
visited appellant's room, read him the required *Miranda*
warnings, and asked appellant if he wished to make a

1. Just prior to being placed in a hospital bed, appellant was escorted
to a confrontation with complainant Mitchell. Mitchell identified
appellant as his assailant. Mitchell died before trial from causes
unrelated to this incident.

statement. At that time, appellant admitted being at the victims' residence the previous evening in the company of one Zeke Bonds, but denied having a gun or shooting anyone. Mr. Bonds fired the shotgun, appellant explained, in an attempt to "rip off the guy for his gun." T.T. 4/26/77, p. 63. Appellant further stated that "when he went with Zeke, he wasn't going to hurt anyone." id. A pre-trial motion to suppress the statement was denied and it was admitted at his non-jury trial.

It is an established constitutional principle that a defendant is deprived of due process if his conviction is founded, in whole or in part, upon an involuntary confession. U.S.Const. Amends. V, XIV; *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Commonwealth v. Perry*, 475 Pa. 1, 379 A.2d 545 (1977); *Commonwealth ex rel. Gaito v. Maroney*, 422 Pa. 171, 220 A.2d 628 (1977). The introduction of such a confession constitutes reversible error even if there is otherwise sufficient evidence to support the conviction. *Commonwealth v. Hallowell*, 444 Pa. 221, 282 A.2d 327 (1971).

"The ultimate test remains that which has been the only clearly established test in Anglo-American courts for 200 years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne, and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession." *Culombe v. Connecticut*, 367 U.S. 568, at 602, 81 S.Ct. 1860, at 1879, 6 L.Ed.2d 1037, at 1057 (1961). See also, *Commonwealth v. Walker*, 470 Pa. 534, 368 A.2d 1284 (1977).

In determining voluntariness, the court must consider and evaluate the totality of the circumstances attending the confession.

" . . . [T]he duration, and the methods of interrogation; the conditions of detention, the manifest attitude of the police toward the defendant, the defendant's physical and psychological state and all other conditions present which may serve to drain ones powers of resistance to suggestion and undermine his self-determination. [citations omitted]

As we have noted, when the question of voluntariness passes beyond the realm of physical coercion and into degrees of psychological coercion, most careful attention will be afforded to any facts, circumstances or events tending to overbear the will of the accused. *Commonwealth ex rel. Butler v. Rundle*, supra, 429 Pa. [141] at 149, 239 A.2d [426] at 430."

*Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Alston*, 456 Pa. 128, 317 A.2d 241 (1974); *Commonwealth v. Purvis*, 458 Pa. 356, 326 A.2d 369 (1974). Particularly important in such cases as we have instantly is the accused's physical condition, for sickness and ill health may well influence his will to resist and make him vulnerable to overbearing and improper questioning. *Commonwealth v. Holton*, 432 Pa. 11, 247 A.2d 228 (1968).

The burden rests with the Commonwealth to show voluntariness of a confession by a preponderance of credible evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Commonwealth v. Moore*, 454 Pa. 337, 311 A.2d 620 (1973). Our duty on review is to determine whether the record supports the factual and legal findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we are to consider only the evidence of the Commonwealth's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975).

At the suppression hearing, the only witness bearing on the confession was Detective Nespoli. The defense offered no testimony. Nespoli summarized appellant's condition when the statement was taken:

"He was laying on the litter. He told me he was in pain. He said his stomach was hurting, but he answered questions candidly. Everything I asked him seemed to make sense with his answers." S.T. p. 28. Additionally, Nespoli advised appellant of all required *Miranda* warnings and asked a doctor, present in the room during the interview, if it would be all right to speak with appellant. The doctor replied yes. Appellant indicated he understood his constitutional prerogatives, that he did not want to continue later and that he would talk at that time. Nespoli further stated appellant did not appear to be in a drugged condition and that no promises or threats of any kind were employed to obtain the statement. Appellant offered no testimony at the suppression hearing to rebut the detective's assertions.

Appellant argues that the interrogating officer should have made inquiry as to appellant's medical condition and what medication had been administered to him. In *Commonwealth v. Cornish*, 471 Pa. 256, 370 A.2d 291 (1977), however, the Supreme Court expressly declined to adopt such a per se rule of inquiry and stated the issue "is one to be resolved by examining the totality of the circumstances." Id., 471 Pa. at 268, 370 A.2d at 297. Similarly, the fact that appellant did not sign a waiver of rights form is not per se dispositive of the issue of voluntariness. "The rule of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) does not require that a waiver of rights be in writing, but only that it be voluntarily, willingly, and intelligently made." *Commonwealth v. Cost*, 238 Pa.Super. 591, 604, 362 A.2d 1027, 1033 (1976).

The Supreme Court, has, on a number of occasions, considered the legality of confessions obtained when the accused is suffering from medical infirmities and has found voluntariness based solely on the credible testimony of the

interrogating officer. See, e. g. *Commonwealth v. Cornish,* 471 Pa. 256, 370 A.2d 291 (1977) (defendant suffering from drug withdrawal; officer's testimony that defendant "appeared to comprehend and understand everything which was said to him", held to establish voluntariness); *Commonwealth v. Smith,* 447 Pa. 457, 291 A.2d 103 (1972) (defendant intoxicated; officers testified defendant was "alert and responsive, and at no time failed to understand the nature of the interrogation or the questions asked of him"; Court found confession voluntary); *Commonwealth v. Moore,* 454 Pa. 337, 311 A.2d 620 (1972) (defendant suffering from heroin withdrawal; officers testified he seemed "normal, alert, and responsive"; Court found voluntariness). Thus, while expert medical testimony would be helpful to the suppression court in determining the accused's physical and mental impairities,[2] the foregoing cases demonstrate that credible testimony of the interrogating officers alone can substantiate a finding of voluntariness.

 As the *Moore* court noted, "Here the suppression judge obviously chose to believe the testimony of the two police officers as to [defendant's] condition and ability at the time the challenged statements were given . . . As we observed in *Commonwealth v. Smith* [447 Pa. 457, 461, 291 A.2d 103, 104 (1972)]:

> 'An appellate court does not weigh evidence or pass upon the credibility of witnesses, and there is no basis for us to hold as a matter of law that the court's finding of voluntariness of the confession was not adequately supported and well within the court's discretion.' "

*Moore,* supra, 454 Pa. at 341, 311 A.2d at 622–3.[3]

 The post-verdict court in the instant case reviewed the notes of the Suppression Hearing, assessed Detective

---

**2.** Indeed, the Court in *Cornish* hinted that a preferable procedure would be for the police to first gain an expert medical appraisal of a suspect's condition before attempting a hospital interrogation. id., 471 Pa. at 268, 370 A.2d at 297.

**3.** This is thus not a case where we must find an "egregious disregard" for appellant's constitutional rights. *Commonwealth v. Walk-*

Nespoli's credibility at trial and found him a credible witness. Based upon this record, we cannot upset that court's finding that the confession was voluntary and properly admitted.

Judgment of sentence Affirmed.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

*er*, supra, 470 Pa. 534, 368 A.2d 1284 (1977) (appellant, just prior to interrogation, had been knocked unconscious, was intoxicated, groggy, and had a badly swollen eye; Court found confession involuntary); *Commonwealth v. Hollowell*, supra, 444 Pa. 221, 282 A.2d 327 (1971) (appellant had been shot five times, blackjacked, and pistol whipped about the head; confession elicited "a scant 30 minutes" after all the foregoing, held, involuntary); *Commonwealth ex rel. Gaito v. Maroney*, supra, 422 Pa. 171, 220 A.2d 628 (1966) (appellant had undergone surgery for serious bullet wound and was administered heavy doses of sedatives and other medications; confession extracted four hours after surgery held, involuntary); *Commonwealth v. Perry*, 475 Pa. 1, 379 A.2d 545 (1977) (appellant suffering from gunshot wound; under heavy medication and in pain from a catheter; held, confession involuntary; plurality opinion).