429 A.2d 4

**COMMONWEALTH of Pennsylvania,**

v.

**Edwin Raymond STAMM, Appellant.**

Superior Court of Pennsylvania.

Submitted June 13, 1980.

Filed April 20, 1981.

Alan B. Ziegler, Assistant Public Defender, Reading, for appellant.

J. Michael Morrissey, District Attorney, Reading, for Commonwealth, appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

HESTER, Judge:

Following a jury trial, appellant Edwin Stamm was found guilty of theft and receiving stolen property in the Court of Common Pleas, Berks County. Post trial motions were argued and denied and a sentence of two to four years imprisonment was imposed. This direct appeal followed.

The factual scenario leading to conviction may be briefly summarized. On the evening of May 13, 1978, Daisy's Dress Shop in Reading, Pennsylvania, was burglarized by one Johnnie Diaz, who removed therefrom dresses, coats, and other ladies' apparel. Entry was effected by removing wooden panels from a rear door of the shop. Later that evening, Diaz was driving about the city in the company of the appellant, appellant's sister Karen, and one Linda Merkel. Diaz stopped the car near Daisy's, while appellant and his sister walked around to the store's rear. Presently, they

returned to the car with appellant carrying several coats and Karen Stamm bearing a large green laundry bag full of jewelry. Afterward, at appellant's residence, the loot was divided in various ways, with appellant retaining some $600.00 worth of goods. In a pre-trial statement given to arresting officers, appellant denied entering the store, but admitting to taking some of the goods which he found on the rear porch of the store. Testifying in his own behalf at trial, appellant reiterated the substance of his pre-trial statement.

Appellant first contends the court erred in failing to suppress his confession as being involuntary. On appeal, our duty is to determine whether the record supports the factual and legal conclusions of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we will consider only the evidence of the Commonwealth's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975). So viewed, the record of the suppression hearing reveals that in the early afternoon of May 19, 1978, Detective Zuchowski of the Reading Police Force arrived at appellant's residence and requested him to accompany the officer to City Hall for questioning about the burglary. At that time, the officer observed that appellant's head was bandaged as a result of an automobile accident four days earlier. At the station, appellant stated he understood why he was being interrogated, that he understood his *Miranda* warnings, and did not wish an attorney to be present. Officer Zuchowski reduced appellant's statement to writing and appellant initialled each of the seven paragraphs therein and affixed his signature at the bottom. In Zuchowski's opinion, appellant was alert and responsive, did not complain of pain, and understood fully what was transpiring.

In his own behalf at the pre-trial hearing, appellant testified that he was in a car accident on May 15, 1978, requiring some 50 stitches at the hospital to close a head

wound.  He was released from the hospital the same day but stated he felt dizzy, was in pain, and couldn't sleep for a few days.  Appellant contended he was "confused" when he gave the statement to the officer.  The defense also produced a physician's assistant at the county jail who stated appellant had complained of headaches and a partial hearing loss when examined at the jail after his arrest.

The suppression court found that the confession was voluntarily and knowingly rendered, crediting the officer's observations.  Appellant's injuries had occurred four days before his arrest and he had recovered sufficiently to allow him to intelligently decide whether to give a statement or not.  There was no evidence that he was taking medication at the time and his injuries were not serious enough to require overnight hospitalization.  The court did not believe appellant's testimony that he was "confused" or that he did not understand what he was doing.  We find the record supports the court's findings.  This is not a case where an accused, lying in a hospital bed, suffering from serious wounds and under heavy medication, has rendered an involuntary confession.  See, e. g., *Commonwealth v. Perry*, 475 Pa. 1, 379 A.2d 545 (1977); *Commonwealth v. Walker*, 470 Pa. 534, 368 A.2d 1284 (1977); *Commonwealth v. Hallowell*, 444 Pa. 221, 282 A.2d 327 (1971).  Rather, this case is akin to those where we found the defendant, although suffering from some infirmity such as drug withdrawal or intoxication, was nonetheless capable of giving a confession of his own volition.  *Commonwealth v. Cornish*, 471 Pa. 256, 370 A.2d 291 (1977); *Commonwealth v. Smith*, 447 Pa. 457, 291 A.2d 103 (1972); *Commonwealth v. Swint*, 450 Pa. 54, 296 A.2d 777 (1972).  In such cases, we found the testimony of the interrogating officer alone sufficient to sustain a finding of voluntariness.  *Commonwealth v. Hunt*, 263 Pa.Super. 504, 398 A.2d 690 (1979).  Appellant, insisting that he was "confused" during the interrogation, relies heavily upon this portion of the statement:

I thought that this burglary happened on Friday night because I was at home baby-sitting for my sister.  It could

have been Saturday night, I really don't remember. I'm confused.

We agree with the court below that appellant's "confusion" in the statement, taken in context, relates only to whether the burglary occurred on a Friday or Saturday, and did not mean that he was confused throughout the entire questioning. The suppression court, which heard the testimony and could assess credibility, accepted the officer's observations that appellant was alert and responsive and that the confession was voluntary. *Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978); *Commonwealth v. Harm*, 272 Pa.Super. 431, 416 A.2d 533 (1979). We will not disturb that finding. Moreover, since appellant's own testimony at trial conformed in all material respects with his pre-trial confession, we fail to discern any actual prejudice. Appellant never disputed the accuracy of his confession.

Appellant next contends the court erred in failing to strike for cause juror No. 6, Irene J. Barber. The voir dire examination was not transcribed, but counsel's objections to the juror were placed on the record. It appears that Miss Barber was an aunt of a member of the district attorney's staff (not the trial prosecutor), and was related to a police prosecutor in the case, although the exact degree of relationship was not disclosed by the record. The court refused to strike the juror after she indicated her relationship to those persons would not cause her to favor the Commonwealth. Appellant exercised his final peremptory challenge to remove Miss Barber from the panel.

It is, of course, error to force a defendant to use his peremptory challenges on a prospective juror who should have been excused for cause and that defendant then exhausts his peremptories prior to seating the jury. *Commonwealth v. Jones*, 477 Pa. 164, 383 A.2d 874 (1978); *Commonwealth v. McBee*, 267 Pa.Super. 49, 405 A.2d 1297 (1979). There are two situations in which a challenge for cause should be sustained and a juror excused:

The first is where the prospective juror indicates by his answers that he will not be an impartial juror. [See, e. g.,

*McBee,* supra] The second is where, irrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses. *Commonwealth v. Colon,* 223 Pa.Super. 202, 299 A.2d 326 (1972).

*Commonwealth v. Fletcher,* 245 Pa.Super. 88, 369 A.2d 307, 308 (1976); *Commonwealth v. Rough,* 275 Pa.Super. 50, 418 A.2d 605 (1980). Thus, such a "close" or "real" relationship exists where the venireman is a member of the same police force which has officers testifying in the case. *Jones, Fletcher,* supra. In other situations, however, our courts have found the relationship of the potential juror with some person or aspect in the case not sufficiently "close" as to require disqualification as a matter of law. See, e. g., *Commonwealth v. Colon,* 223 Pa.Super. 202, 299 A.2d 326 (1972) (juror's mere status as law enforcement officer); *Commonwealth v. Warner,* 209 Pa.Super. 215, 225 A.2d 98 (1966) (wife of court stenographer of President Judge in county of trial; wife of former county district attorney, six years out of office); *Rough,* supra, (venireman's chance discussion with neighbor about local man who had committed crimes charged at trial).

In the instant case, defense counsel did not place on the record how close or remote was Miss Barber's relationship with the police prosecutor. In any event, our Supreme Court has held that relatives of county detectives, even if the officer is the active prosecutor in the case, are not to be disqualified on that basis alone. *Commonwealth ex rel. Fletcher v. Cavell,* 395 Pa. 134, 149 A.2d 434 (1959); *Commonwealth v. Fletcher,* 387 Pa. 602, 128 A.2d 897 (1957); *Commonwealth v. Peronace,* 328 Pa. 86, 195 A. 57 (1937). Similarly, we think Miss Barber's kinship to a member of the district attorney's staff is too remote instantly to warrant a presumption of prejudice. Absent a fixed opinion of guilt, there was no ground for disqualification.

Appellant next argues the court erred in instructing the trial prosecutor, in front of the jury, in how to lay a proper foundation for admitting certain evidence. We are directed to several places in the record where the prosecutor was attempting to have the complainant identify photographs of coats taken in the burglary. When the assistant district attorney experienced some difficulty in following the correct procedure with respect to identification and admission, the court offered suggestions and asked a few questions of the witness concerning identity of the exhibits.

While the practice of a judge in entering the case as an advocate is disapproved, *Commonwealth v. Mims*, 481 Pa. 275, 392 A.2d 1290 (1978); *Commonwealth v. Toombs*, 269 Pa.Super. 256, 409 A.2d 876 (1979), nonetheless it remains the trial court's inherent right to question a witness so as to clarify existing facts and elicit new information where necessary. *Commonwealth v. Parks*, 273 Pa.Super. 506, 417 A.2d 1163 (1979); *Commonwealth v. Lanza*, 228 Pa.Super. 300, 323 A.2d 178 (1974). In questioning a witness, however, and in injecting itself into the trial, the court should be ever so careful not to demonstrate bias or an opinion concerning credibility of a witness. *Commonwealth v. Rhem*, 283 Pa. Super. 565, 424 A.2d 1345 (1980); *Commonwealth v. Kennerly*, 269 Pa.Super. 404, 410 A.2d 319 (1979); *Lanza*, supra.

Under these standards, we perceive no error instantly. The court did no more than assist the prosecutor in a merely technical procedure whereby a physical document is admitted into evidence. There is no indication that the court expressed an opinion as to the credibility of the witness. Moreover, as we read the record, the court was at times openly critical of the manner in which the prosecutor was attempting to admit the photographs. Thus, if the court's intervention benefitted anyone, it was the defense. Finally, we note that, during defense counsel's cross-examination of Linda Merkel, the court instructed counsel in front of the jury concerning the proper procedure to admit a prior inconsistent statement. Thus, the court's later assistance of the assistant district attorney was unbiased and, on the whole, even-handed. There was no error.

418

■ Appellant contends the court improperly limited his cross-examination of Commonwealth witness Linda Merkel. In her testimony at trial, Miss Merkel stated that Karen Stamm had accompanied appellant to the back of Daisy's on the night in question. In one of her statements to the police, however, Miss Merkel had omitted Miss Stamm's name as one who joined appellant. Defense counsel, in eliciting this inconsistency, attempted to have the witness read portions of her pre-trial statement aloud to the jury, but was prevented from doing so by the court. Whatever error occurred was certainly cured when counsel himself directly confronted the witness with her prior inconsistency. Miss Merkel admitted not telling the whole truth to the police and even conceded she had lied. "Thus, the jury as well as the witness was made aware of the inconsistency to which attention was being drawn." *Commonwealth v. Petrakovich,* 459 Pa. 511, 526, 329 A.2d 844, 851 (1974). In view of the fact that counsel accomplished his ultimate purpose and secured damaging admissions from the witness, we find no error.

■ Appellant complains that he was not provided with a full transcript of his trial. After filing of post-trial motions, a conference was held between counsel and the court relative to transcribing the testimony. Following the conference, the court ordered that only certain witnesses' testimony and exceptions challenged in the post trial motions need be transcribed. It thus appears from the record that counsel agreed that only portions of the testimony should be transcribed. Moreover, the remainder of the testimony was filed before the lower court wrote its opinion. Thus, appellant has had the benefit of the full trial transcript during the pendency of this appeal, yet has failed to suggest what additional contentions he might have raised below. In a related argument, appellant avers the court failed to grant him 15 additional days to file amended post trial motions following the filing of the partial transcript. Again, appellant has not alleged any actual prejudice and has not posited any substantive arguments that he would have raised. Fur-

ther, when appellant filed his brief on post trial motions, he was entitled to raise therein any additional issues not specifically set forth in post trial motions. Such a procedure would have preserved those issues for review. *Commonwealth v. Jones*, 478 Pa. 172, 386 A.2d 495 (1978); *Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977). But see, *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979). We find no error.

We have carefully examined appellant's remaining contentions and find them completely lacking in merit and very ably refuted in Judge Eshelman's lengthy opinion below.

Judgment of sentence affirmed.