STEINBERG, J.,
The defendant, Courtney Quinn, is charged with Homicide by Vehicle,[1] Involuntary Manslaughter,[2] Recklessly Endangering Another Person[3] (2 counts), and various traffic violations. It is alleged that on April 12, 2014, the defendant, while driving northbound in her 2011 Hyundai Elantra on State Route 145, fell asleep and crossed over into the southbound lane of traffic. Her actions caused a head-on collision with a Volkswagen Jetta operated by Jennifer Ebert. Ms. Ebert *132 and her granddaughter, P.E., suffered serious injuries as a result of the collision, and Ms. Ebert succumbed to her injuries.
On October 17,2014, counsel for the defendant filed an “omnibus pretrial motion” seeking to suppress statements made by the defendant to both Pennsylvania State Police and Emergency Medical Personnel. During the hearings on these motions, which were held on October 28, 2014 and November 18, 2014, the Commonwealth presented the testimony of Christopher Fegley and Stephen Hall, paramedics with Cetronia Ambulance Corps., and Trooper Ryan Seiple and Trooper Jason Myers of the Pennsylvania State Police. Additionally, the Commonwealth introduced into evidence the waiver of rights and consent to search form signed by the defendant.[4]
The evidence revealed that on April 12,2014, Paramedic Fegley was dispatched to a vehicle crash on State Route 145 at approximately 8:30 a.m., and upon his arrival, observed the defendant in her vehicle with heavy damage to the driver’s side. The defendant, who was trapped in the car, was administered 100 micrograms of Fentanyl to relieve her pain and anxiety. Following her extraction from her vehicle, she was placed in an ambulance, and transported to Lehigh Valley Hospital. While doing so, Paramedics Fegley and Hall, in the performance of their duties, asked the defendant some biographical information regarding her name, address, and date of birth, which she answered appropriately. She was also asked questions to *133 determine her mental status in order to establish the nature of her illness or mechanism of injury. In that regard, Paramedic Fegley asked the defendant “what happened.” She responded that she worked late and “believes she may have fallen asleep while driving.” The defendant was given a second dose of Fentanyl in the ambulance for her pain.
Trooper Seiple also reported to the scene of the incident and briefly spoke to the defendant, who relayed that she did not recall what happened. Later that afternoon, he attempted to speak to the defendant at the hospital where her family members, including her step-father, were present, but she could not recall the events leading up to the collision. The defendant did, however, confirm her step-father’s explanation of her employment details prior to getting behind the wheel of her car.
On April 12, 2014, Trooper Myers was dispatched to Lehigh Valley Hospital to interview the defendant. Upon introducing himself, the defendant fell asleep, but awoke shortly thereafter. She then told him that she “had not slept in a while” and explained in more detail both her employment and school schedule. Following the interview, which lasted less than ninety minutes, Trooper Myers requested consent to search the defendant’s cell phone. The “waiver of rights and consent to search” form was read to her “verbatim” by Trooper Myers, after which the defendant acknowledged that she understood it, and then signed it.
During the interview, the defendant remembered very *134 little, if anything, about the collision. She also fell asleep several times and complained of pain while Trooper Myers was present. Trooper Myers inquired about her condition, and was told by a nurse that the defendant would be okay. He departed the hospital without arresting the defendant, and did not do so until June 23, 2014.
On April 29, 2014, after the defendant was released from Lehigh Valley Hospital, Trooper Seiple spoke with her by phone. The defendant was unable to provide any details regarding the collision.
Discussion
The defendant seeks to suppress the statements she made to the paramedics who responded to the collision to assist the injured, and the Pennsylvania State Police who interviewed her both at the scene of the collision, and later at the hospital. She contends that her statements should be suppressed because: (1) she was not advised of her Miranda warnings prior to her statements; and (2) her statements were involuntary because of her physical and mental condition caused by the collision. It is also alleged that she was unable to voluntarily consent to a search of her cell phone for the same reasons.
A. Statements To Paramedics
Miranda warnings are only required in a custodial interrogation. Commonwealth v. Housman, 986 A.2d 822, 839 (Pa. 2009). Custodial interrogation has been defined as “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise *135 deprived of [] [her] freedom of action in any significant way.” Commonwealth v. Mannion, 725 A.2d 196, 200 (Pa. Super. 1999); see also Commonwealth v. Garvin, 50 A.3d 694, 698 (Pa. Super. 2012); Commonwealth v. Gonzalez, 979 A.2d 879, 887-888 (Pa. Super. 2009) quoting Miranda v. Arizona, 384 U.S. 436, 444 (1996). The United States Supreme Court has stated the “ultimate inquiry is...whether there [was] a ‘formal arrest or restraint on freedom of movement’ of the degree associated with a formal arrest.” Commonwealth v. Boczkowski, 846 A.2d 75, 90 (Pa. 2004) quoting Stansbury v. California, 511 U.S. 318, 322 (1994).
Here, the defendant was neither in custody nor was she subject to interrogation when she told the paramedics that she may have fallen asleep while behind the wheel of her vehicle. She was being treated, not interrogated, and the paramedics’ inquiries were not at the behest of law enforcement. Neither of the paramedics possessed the status of law enforcement for purposes of custodial interrogation. Their presence at the site of the collision was not to further a criminal investigation.
“The determination of whether statements were elicited at a custodial interrogation must be made in light of the totality of [the] circumstances involved, and the status of the questioner is only one of the relevant circumstances.” Commonwealth v. Heggins, 809 A.2d 908, 915 (Pa. Super. 2002)(collecting cases) quoting Commonwealth v. McGrath, 470 A.2d 487, 493 (Pa. 1983)(counselors at juvenile placement facility were providing treatment and were not the equivalent of law enforcement, and so Miranda *136 did not apply.). See also People v. Jones, 565 N.Y.S.2d 262, 264-265 (1991)(statements made to an ambulance driver and nurse while providing treatment to defendant were admissible because a private person may acquire information to be used in a criminal investigation even where police would be constitutionally restrained.); People v. Esmail, 688 N.Y.S.2d 186, 188 (1999)(statements made to EMS workers were admissible.); State v. Newcomb, 679 S.E.2d 675, 695 (2009)(collecting cases)(statements to emergency medical services personnel while being treated, but overheard by deputy, were not the result of custodial interrogation.); Reinert v. Larkin, 211 F.Supp.2d 589, 600-601 (E.D. Pa. 2002) aff’d 379 F.3d 76, 86 (3d Cir. 2004)(statement to paramedic in presence of police officers was not the product of custodial interrogation); cf. McGrath, 470 A.2d at 491-495 (collecting cases) (inculpatory statements made by private in Marine Corps to his commanding officer concerning homicide required Miranda warnings); Commonwealth v. Chacko, 459 A.2d 311, 315 n.3 (Pa. 1983)(statement to director of treatment required Miranda warnings because he was acting in furtherance of on-going investigation); Commonwealth v. Ramos, 532 A.2d 465 (Pa. Super. 1987)(statement to CYS worker about child molestation charges was elicited during custodial interrogation even though caseworker said investigation was civil not criminal in nature.).
Since the defendant’s statements to the paramedics were not the product of a custodial interrogation, they are considered “gratuitous.” Heggins, 809 A.2d at 916. “Gratuitous statements do not require the issuance of *137 Miranda warnings.” Id. As a result, the defendant’s statements to the paramedics are admissible.
B. Statements to Troopers Seiple and Myers
1. Trooper Seiple
Not every statement made by an individual during a police encounter constitutes interrogation. Miranda was “not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to fact surrounding a crime or other general questioning of citizens in the fact-finding process” does not constitute interrogation. Miranda v. Arizona, 384 U.S. 436, 477 (1966); Commonwealth v. Grimes, 648 A.2d 538, 541 (Pa. Super. 1994)(wamings are not required where general on-the-scene investigatory questioning is conducted to determine whether a crime has been committed).
Miranda warnings, as explained earlier, are only required prior to a custodial interrogation. “The standard for determining whether an encounter with the police is deemed ‘custodial’...is an objective one based on a totality of the circumstances with due consideration given to the reasonable impression conveyed to the person interrogated.” Commonwealth v. Johnson, 42 A.3d 1017, 1028 (Pa. 2012)(defendant was not in custody when he made statements to police who responded to a report of an unresponsive two year old child on kitchen floor); See also Boczkowski, 846 A.2d at 90; Commonwealth v. Ingram, 814 A.2d 264 (Pa. Super. 2002). In Commonwealth v. Baker, 24 A.3d 1006, 1019-1020 (Pa. Super. 2011) citing *138 Commonwealth v. Mannion, 725 A.2d 196, 200 (Pa. Super. 1999), the following factors were identified to determine under the totality of the circumstances whether a detention has become so coercive to constitute the functional equivalent of an arrest:
[T]he basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.
Id. See also Commonwealth v. Williams, 941 A.2d 14, 30 (Pa. Super. 2008); Commonwealth v. Watkins, 750 A.2d 308, 313 (Pa. Super. 2000).
In Howes v. Fields, 132 S.Ct. 1181, 1189 (2012), it was similarly explained:
As used in our Miranda case law, ‘custody’ is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave. And in order to determine how a suspect would have gauge[d] his freedom of movement, courts must examine all of the circumstances surrounding the interrogation. Relevant factors include the location of the questioning, its duration, statements made during the interview, the *139 presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.
Id. (internal quotations and citations omitted).
Here, the defendant was not in custody when she was briefly questioned by Trooper Seiple at the scene of the collision. The trooper was still in the process of investigating the circumstances of the collision, and the defendant was the only person present who was responsive. Other than telling Trooper Seiple that she did not remember the circumstances surrounding the collision, the only other information elicited was her name and address.
When Trooper Seiple spoke to the defendant that afternoon at approximately 4:15 p.m. in her hospital room, the character of the questions had not changed. His inquiries were investigatory, not accusatory, and were asked in the presence of the defendant’s family members. The defendant maintained that she did not recall the events. The only other pertinent information provided to Trooper Seiple came from the defendant’s step-father. He reviewed the defendant’s “employment details” in her presence at the hospital, which she confirmed. Those statements were not part of a custodial interrogation, and not the product of any coercion.[5] It is doubtful that *140 the defendant’s confirmatory statements even constitute interrogation.
Other courts faced with similar circumstances have concluded that general on-the-scene questioning to determine whether there was a crime does not require Miranda warnings. In Commonwealth v. Gonzalez, 546 A.2d 26, 29 (Pa. 1988), police inquiries of the defendant at the scene of an accident about his welfare, and the circumstances of the accident, did not constitute a custodial interrogation. The defendant was not in custody nor could he have reasonably believed he was in custody for purposes of Miranda. “At that time, the appellant was not under arrest and he has not shown that he was subjected to restraints comparable to those associated with an arrest. The appellant was asked a minimal number of questions at the scene of an accident on a public street.” Id. at 30. See also Commonwealth v. Williams, 941 A.2d at 30-33; Commonwealth v. Hausman, 2002 WL 32096596 (Pa. Com.Pl. 2002).
Likewise, the defendant was not subject to a custodial interrogation when Trooper Seiple visited her in the hospital, and in the presence of family members, made some limited inquiries. In Commonwealth v. Perry, 710 A.2d 1183, 1186 (Pa. Super. 1998), a trooper who responded to an accident learned that the defendant had *141 an odor of alcohol on his breath, but did not question the defendant, because the defendant was transported to a local hospital for treatment of injuries. The trooper then proceeded to the hospital to question the defendant about the accident and did so while the defendant was “lying on his back on a gurney, wearing a neck brace.” Id. at 1185. Relying upon Commonwealth v. Fento, 526 A.2d 784 (Pa. Super. 1984), it was held that Miranda warnings were not required because the defendant was not subject to custodial interrogation. The court in Perry reasoned,
[t]he overriding concern of this court is to determine what was the reasonable belief of the accused during the questioning. Although a factor, the motive of the trooper, specifically, whether the accused was the focus of a criminal investigation, is not the central issue.... Appellant was not faced with a situation where he could reasonably believe he was unable to end questioning at his discretion. All facts indicate that appellant was not pressured to answer questions nor was his environment conducive to an interrogation. His family was present as were medical personnel. No evidence indicates that the officer pressured appellant to answer questions, and, from all indications, his statements were voluntary.
Id. at 1186-1187 (internal citation omitted).
In Commonwealth v. Ellis, 549 A.2d 1323, 1333 (Pa. Super. 1988), the defendant was questioned in a hospital emergency room. The defendant was not placed under arrest, and the only restraints “were those caused by [the defendant’s] medical condition, as opposed to any action *142 on the part of the police.” Id. See also Commonwealth v. Johnson, 727 A.2d 1089 (Pa. 1999)(interview at Reading Hospital was not custodial in nature); Fento, 526 A.2d at 787-789 (routine questioning of a driver while being treated at a hospital was not tantamount to custodial interrogation); Kimberly R Winbush, J.D., What Constitutes “Custodial Interrogation ” at Hospital by Police Officer Within Rule of Miranda v. Arizona Requiring that Suspect Be Informed of His or Her Federal Constitutional Rights Before Custodial Interrogation — Suspect Hospital Patient, 30 A.L.R. 6th 103 (2008).
2. Trooper Myers
Trooper Myers’ interview with the defendant lasted less than ninety (90) minutes, and ended without an arrest. It was conducted in the defendant’s hospital room, and in light of her inability to remember much about the collision, consisted mainly about her activities leading up to the collision. Those details included her recent sleeping history and her hours of employment at Aeropostale.
It was never Trooper Myers’ intention to take her into custody when he completed his interview even though he thought she was the cause of the collision. Even so, the fact that a police investigation has focused on a particular individual does not lead to the conclusion that the defendant was in custody for Miranda purposes. Commonwealth v. Williams, 650 A.2d 420, 427 (Pa. 1994)(the test for custodial interrogation does not depend upon the subj ective intent of the law enforcement interrogator, but on whether the individual being interrogated reasonably believes her *143 freedom of action is being restricted). See also Ellis, 700 A.2d at 954-955. Baker, 24 A.3d at 1020 quoting Fento, 526 A.2d at 787.
The defendant was in the hospital for medical and not custodial reasons. She was not handcuffed, and if her physical condition permitted her to do so, she could have departed the hospital without any police intervention. Ultimately, she was not arrested until June 23, 2014.
Given these facts, even if the defendant was a suspect in causing the collision, Miranda warnings were not required to be provided to her. The defendant was not deprived of her freedom of movement when she was interviewed, and any restraint on her freedom of movement was due to the injuries she sustained in the collision. Commonwealth v. Smith, 555 A.2d 185, 190-191 (Pa. Super. 1989).
C. Voluntariness of Statements
The defendant contends that her statements were not voluntary because she “suffered from numerous injuries and showed visible pain”[6] at the collision scene. It is also alleged that she was administered “pain medication”[7] which rendered her statements involuntary.
The testimony of the troopers and paramedics at the suppression hearing regarding the defendant’s condition at the collision scene and later at the hospital was uncontradicted. There was no dispute that the defendant was injured, and administered Fentanyl on two (2) *144 occasions before she arrived at the hospital. However, neither injuries nor pain medication is the sine qua non for reaching the conclusion that a statement is involuntary.
Paramedic Fegley testified that the defendant was alert and oriented and on the Glasgow Coma Scale she was a fifteen (15), or fully awake. Paramedic Hall testified that the defendant was able to answer all questions and never lost consciousness. Trooper Seiple testified that when he spoke to the defendant at the collision scene, she was in pain, but understood what she was being asked. Finally, Trooper Myers testified that although he had to rouse the defendant a few times at the hospital, when he was able to speak to her, she was “lucid.”
The test for determining the voluntariness of an accused’s statements is the totality of the circumstances. Commonwealth v. Martin, 101 A.3d 706, 724 (Pa. 2014); Commonwealth v. Smith, 85 A.3d 530, 537-538 (Pa. Super. 2014) quoting Commonwealth v. Wright, 14 A.3d 798, 815 (Pa. 2011)(“When a court is called upon to determine whether a confession is voluntary and, hence, admissible at trial, it examines the totality of the circumstances surrounding the confession to ascertain whether it is the product of an essentially free and unconstrained choice by its maker.”). The burden rests with the Commonwealth to show voluntariness by a preponderance of credible evidence. Commonwealth v. Hunt, 398 A.2d 690, 692 (Pa. Super. 1979); see also Pa.R. Crim.P. 581(H).
Numerous factors should be considered to determine whether a statement is freely and voluntarily made, *145 including the following:
The means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused’s detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused’s physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one’s powers of resistance to suggestion and coercion.
Martin, 101 A.3d at 725 citing Commonwealth v. Perez, 845 A.2d 779, 785, 787 (Pa. 2004).
Here, the only factor which needs to be reviewed is the defendant’s “physical state” as it pertains to her injuries, and whether her medication affected her statements. Nothing in the evidence suggests that she was subjected to prolonged questioning or any abuse or threats. She was being treated by medical personnel on the scene and at the hospital, and so she was not deprived of “food, drink, sleep, or medical attention.” Trooper Myers’ decision to rouse her when she dosed-off is not sleep deprivation.
In Commonwealth v. McQuaid, 417 A.2d 1210, 1213 *146 (Pa. Super. 1980), the court recognized that the mental and physical condition of the accused at the time of an inculpatory statement is a very important circumstance in evaluating the totality of the circumstances. However, it was also determined that an inculpatory statement was voluntary notwithstanding that it was made in a hospital setting where the defendant was being treated for a gunshot wound to the head.
The “legality of confessions obtained when the accused is suffering from medical infirmities” has been considered on a number of occasions. Hunt, 398 A.2d at 693. In Hunt, the defendant was interviewed at the hospital while being treated for a knife wound. The defendant’s condition was described by the investigating detective as follows:
‘He was laying on the litter. He told me he was in pain. He said his stomach was hurting, but he answered questions candidly. Everything I asked him seemed to make sense with his answers.’ Additionally, Nespoli advised appellant of all required Miranda Warnings and asked a doctor, present in the room during the interview, if it would be all right to speak with appellant. The doctor replied yes. Appellant indicated he understood his constitutional prerogatives, that he did not want to continue later and that he would talk at that time. Nespoli further stated appellant did not appear to be in a drugged condition and that no promises or threats of any kind were employed to obtain the statement. Appellant offered no testimony at the suppression hearing to rebut the detective’s assertions.
*147 Id. at 692-93 (internal citation omitted).
Based on the totality ofthe circumstances, the confession in Hunt was found to be voluntary. However, the court pointed out that their conclusion would be different if they had found an “egregious disregard” for the defendant’s constitutional rights, which would require suppression of the statement. Id. at 693 n. 3; cf. Commonwealth v. Walker, 368 A.2d 1284 (Pa. 1977)(appellant, just prior to interrogation, had been knocked unconscious, was intoxicated, groggy, and had a badly swollen eye; court found confession involuntary); Commonwealth v. Hallowell, 282 A.2d 327 (Pa. 1971)(appellant had been shot five times, blackjacked and pistol whipped about the head; confession elicited “a scant 30 minutes” after all the foregoing held involuntary); Commonwealth ex rel. Gaito v. Maroney, 220 A.2d 628 (Pa. 1966)(appellant had undergone surgery for serious bullet wound and was administered heavy doses of sedatives and other medications; confession extracted four hours after surgery held involuntary).
The defense citations to Commonwealth v. Holton, 247 A.2d 228, 231 (Pa. 1968) and Commonwealth v. Perry, 379 A.2d 545 (Pa. 1977)(plurality opinion), while relevant, are not comparable to the within case. The defendant in Holton was a “chronic alcoholic” suffering from delirium tremens, nausea, pain in the stomach and head, and other ailments when he made his inculpatory statement. He also requested medical assistance, which was refused. In Perry, the defendant, who was hospitalized due to a gunshot wound to the chest, complained of pain and also discomfort *148 due to a catheter while being interrogated. During the interview he also asked for medication from a nurse who responded to his room, but was denied medication for pain. Both defendants’ statements, under the totality of the circumstances, were found to be involuntary.
Other cases, like Hunt, have reached the opposite conclusion finding statements to be voluntary despite current or recent medical treatments or ailments. Commonwealth v. Johnson, 727 A.2d 1089 (Pa. 1999) (defendant’s physical condition even though shot in the stomach was not so impaired to render statements to police involuntary); Commonwealth v. Jones, 651 A.2d 1101, 1104 (Pa. 1994)(statements at hospital and bum center where the defendant was being treated for second and third degree bums were found to be voluntary); see also Commonwealth v. Cornish, 370 A.2d 291, 295-97 (Pa. 1977)(drug withdrawal does not automatically invalidate an incriminating statement); Moore, 311 A.2d 620, 622-23 (Pa. 1973)(statement from a defendant, who was experiencing heroin withdrawal, found voluntary); Commonwealth v. Smith, 291 A.2d 103, 104 (Pa. 1972) (drinking does not automatically invalidate subsequent incriminating statements); Commonwealth v. Meachum, 711 A.2d 1029 (Pa. Super. 1998)(heroin use did not make statement involuntary).
Nothing presented at the suppression hearing would lead to the conclusion that the defendant’s physical condition made her statements involuntary. All of the witnesses testified that her answers to questions were responsive, and, while in pain, she was also alert. She was *149 also told by a nurse, while in Trooper Myers’ presence, that she was going to recover from her injuries. Therefore, her emotional strain would have been alleviated by her awareness that her injuries were not life-threatening. Finally, the questioning was of limited duration, and during Trooper Seiple’s presence, family members were present. The statements to Trooper Myers were voluntary even though she fell asleep during portions of his interview. Although a defendant’s fatigue is a relevant factor in determining the voluntariness of a confession, an assertion of “tiredness” is not a sufficient ground upon which to base a finding of involuntariness if there is testimony that the accused was alert and in possession of his or her senses. Commonwealth v. Rose, 396 A.2d 1221 (Pa. 1979).
The defendant’s statements, which were limited primarily to either not remembering the crash or telling the paramedics she may have fallen asleep while driving, were the “product of and unconstrained choice” by the defendant. Hunt, 398 at 692. She had the mental capacity at the time of giving the statement to know what she was saying and to have voluntarily intended to say it. Smith, 291 A.2d at 104. Therefore, the defendant’s statements were voluntary.
D. Consent To Search Cell Phone
“[T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice — not the result of duress or coercion, express or implied, or a will overborne — under the totality of the circumstances.” Commonwealth *150 v. Strickler, 757 A.2d 884, 901 (Pa. 2000); see also Commonwealth v. Smith, 77 A.3d 562, 568-569, 573 (Pa. 2013)(“Gauging the scope of a defendant’s consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.”). In that regard, “the maturity, sophistication and mental or emotional state of the defendant” becomes part of any evaluation into a consent to search. Id. quoting Strickler, 757 A.2d at 901.[8]
Here, the defendant was read the consent to search form “verbatim” by Trooper Myers. She acknowledged that she understood it, and signed it. Her signature was witnessed by Nurse Zum. The form explains that Trooper Myers’ request to search her vehicle, its contents, and the cell phone was in an effort to determine the cause of the collision. Contained within the form is also the following:
I have been told that I do not have to give my consent. I understand that I have the right to refuse this request, and that the police may not be able to conduct this search without a search warrant unless I give my consent.[9]
*151 Trooper Myers did not use deceit, misrepresentation or coercion in seeking to search her cell phone.[10] There were no police excesses or any other factor which would vitiate the consent. The defendant was fully aware that she was not required to consent to the search. Additionally, on the basis of the totality of the evidence, when viewed objectively, a reasonable person “would have contemplated the potentiality of the results being used for criminal, investigative, or prosecutional purposes.” Smith, 77 A.3d at 573.
Trooper Myers, in assessing the defendant, learned that she was employed and attending school, and was satisfied that her responses to his questions were “lucid.” Neither her physical nor her emotional conditions were to a degree that would prevent her from voluntarily consenting to a search of her cell phone. Therefore, based on the evidence presented, the Commonwealth objectively has satisfied its burden that the consent was the “product of an essentially free and unconstrained choice.” Smith, 77 A.3d at 573.
For all the foregoing reasons, the omnibus pretrial motions must be denied.
ORDER
And now, this 2nd day of January, 2015, upon consideration of the defendant’s motion to suppress evidence filed on October 17, 2014 and hearings held in this matter on October 28, 2014 and November 18, 2014; *152 upon further consideration of the briefs of counsel;
It is hereby ordered that the motion to suppress is denied.

.75 Pa.C.S. §3732(a).

. 18 Pa.C.S. §2504(a).

. 18 Pa.C.S. §2705.

. See Commonwealth’s Exhibit 1.

. On April 29, 2014, Trooper Seiple conducted a telephone interview with the defendant. She had been released from the hospital and provided no new information about the collision. She did offer information about her injuries, but nothing that could be characterized as “incriminating”. It is doubtful that her statements to Trooper Seiple constituted “incriminating responses”. However, an incriminating *140 response means “any response — whether inculpatory or exculpatory — that the prosecution may seek to introduce at trial”. Commonwealth v. Petrino, 480 A.2d 1160, 1168 n.5 (Pa. Super. 1984)(emphasis in original). Therefore, the defense has the right to challenge the statements made to Trooper Seiple. However, in light of the discussion taking place by phone, the result is the same.

. Omnibus pretrial motion, ¶¶120,20.

. Id at ¶¶12d, 19.

. A non-exclusive list of factors have evolved in considering whether a search was consensual, including the following: (1) the presence or absence of police excesses; (2) whether there was physical contract; (3) whether police directed the citizen’s movements; (4) police demeanor and manner of expression; (5) the location and time of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) whether the person has been told that he is free to leave; and (9) whether the citizen has been informed that he is not required to consent to the search. Commonwealth v. Kemp, 961 A.2d 1247, 1261 (Pa. Super. 2008) citing Strickler, 757 A.2d at 898-899.

. See Commonwealth’s Exhibit 1.

. The initial search of the cell phone led Trooper Seiple to secure a search warrant for the cell phone. The validity of the search warrant is not a subject of these motions.