IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kriger Construction, Inc.,        :
          Petitioner        :
          :    No. 26 C.D. 2019
      v.        :
          :    Submitted: November 8, 2019
Unemployment Compensation        :
Board of Review,        :
          Respondent        :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: February 10, 2020

Kriger Construction, Inc. (Employer) petitions for review of the December 11, 2018 order of the Unemployment Compensation Board of Review (Board), which found Shelly L. Alexander (Claimant) not ineligible for unemployment compensation (UC) benefits under section 402(b) of the Unemployment Compensation Law (Law).[1] The Board's order reversed a referee's decision that found Claimant ineligible for UC benefits.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b) (providing that a claimant is ineligible for compensation for any week in which her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature).

**Facts and Procedural History**

Claimant worked as a full-time project manager for Employer from May 2, 2016, until April 6, 2018, when she voluntarily resigned her position. (Board Findings of Fact (F.F.) Nos. 1, 8; Reproduced Record (R.R.) at 33a, Notes of Testimony (N.T.) at 6.) Claimant applied for UC benefits and on April 27, 2018, a local service center found her not ineligible for benefits under section 402(b) of the Law. (Certified Record (C.R.) at Item No. 4.) In particular, the local service center determined Claimant voluntarily quit because of harassment from Employer's vice president, Claimant exhausted all alternatives prior to quitting, and, therefore, Claimant had a necessitous and compelling reason for quitting. *Id.*

Employer appealed and a referee conducted a hearing on June 26, 2018, at which Claimant and two witnesses on behalf of Employer testified. At the hearing, Claimant testified that she quit because she was sexually harassed by Employer's vice president and because of an ongoing hostile work environment, while Employer's witnesses testified that Claimant quit after she was reprimanded for misuse of a company vehicle. Following the hearing, the referee found that Claimant had been assigned a company vehicle and that Claimant "abused the use of the company vehicle by returning home from an eating and drinking establishment in the company vehicle at an extremely excessive rate of speed, which was tracked by [Employer's] GPS system." (Referee F.F. Nos. 5-6.) The referee also found that "[w]hen the company vehicle was taken away from [Claimant], [she] voluntarily quit work . . . without ever indicating to [Employer] any harassment, medical or other specific reason as to why she was quitting." (Referee F.F. No. 7.) The referee further found that Claimant "never made any complaint to [Employer's] president . . . concerning any sexual or other harassment or mistreatment." (Referee F.F. No. 8.) Accordingly, the referee

2

concluded that Claimant did not voluntarily quit because of a compelling and necessitous reason and that Claimant was ineligible for UC benefits under section 402(b) of the Law.

Claimant appealed the referee's decision to the Board. By decision dated December 11, 2018, the Board reversed the referee's decision and found Claimant eligible for UC benefits. The Board made the following, pertinent, findings of facts:

2. In or around December 2016, [Claimant] was sexually harassed by the vice president at a Christmas party.

3. [Claimant] told the vice president that she was not interested in him, and no further sexual comments were made to [Claimant].

4. The vice president assigned [Claimant] to a project manager whom [Claimant] did not get along with.

5. The project manager yelled at [Claimant] and belittled her on a regular basis, such as calling her stupid and incompetent.

6. [Claimant] complained about the situation to another project manager, the vice president, and the [Equal Employment Opportunity (EEO)] officer.

7. The vice president did nothing about the situation and laughed at [Claimant].

8. [Claimant] voluntarily quit due to a hostile work environment.

(Board F.F. Nos. 2-8.)

The Board noted that under Pennsylvania law, an employee who is subjected to unjust accusations, abusive conduct, or profanity at the workplace has a

3

necessitous and compelling reason to terminate employment, provided that notice has been given to the employer of the conduct and the employer has been given an opportunity to remedy the conduct. (Board decision at 2.) The Board concluded that Claimant quit due to a hostile work environment. It observed that Claimant testified at the hearing that Employer's vice president told her he wanted to have sex with her and touched her inappropriately at the December 2016 Christmas party. *Id.* The Board also noted Claimant testified she told the vice president his advances were unwelcome and that he stopped. *Id.* Therefore, the Board concluded the proximate cause of Claimant leaving her employment was not sexual harassment because it "stopped long ago" and was "remote in time." *Id.*

However, the Board also observed Claimant "testified that the vice president retaliated against her by assigning her to a project manager that she did not like," which resulted "in her being yelled at and belittled on a regular basis" and being called "stupid and incompetent." *Id.* The Board credited this testimony. *Id.* The Board further noted that Claimant stated she complained to the vice president and the EEO officer, but that nothing was done and, in fact, the vice president laughed at Claimant. *Id.* The Board also found this testimony credible. Accordingly, the Board concluded that Claimant proved she was subjected to a hostile work environment and that Claimant made a good faith effort to preserve her employment. *Id.* Thus, the Board determined Claimant was not ineligible for benefits under section 402(b) of the Law.

## Discussion

Employer now petitions this Court for review of the Board's order,[2] arguing the Board erred in concluding that Claimant had a necessitous and compelling

---

[2] Our review of the Board's decision "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether

4

reason to voluntarily quit her employment due to a hostile work environment and that the Board's findings of fact are not supported by competent evidence of record. Essentially, Employer advocates a different set of events regarding Claimant's voluntary termination of her employment than that found by the Board. Employer argues that Claimant never made any written complaints regarding her work environment between December 2016 and her last day of work in April 2018, and that Claimant only raised the allegations regarding a hostile work environment after she was accused of improper use of a company vehicle. Employer relies on the lack of written documentation supporting Claimant's hostile work environment allegations to impugn her overall credibility. Employer alleges that Claimant only quit after she was confronted with vehicle tracking evidence showing she left Lucky's Sports Bar in the company vehicle at 12:15 a.m., driving 80 miles-per-hour.

Additionally, Employer maintains that it introduced evidence at the hearing which conflicted with Claimant's description of her work environment. Specifically, Employer asserts that its witnesses presented a different view of Claimant's work relationship with her supervisor, including testimony that the supervisor treated Claimant the same way he treated everyone else in the office. Employer also alleges that its witnesses testified that Claimant never complained to Employer's owner and that the owner would never tolerate the type of behavior alleged by Claimant. Employer argues the Board capriciously disregarded this evidence and failed to resolve the conflicts in the evidence.

In UC cases, the Board's findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western &*

---

constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

*Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Western & Southern Life Insurance Co.*, 913 A.2d at 335. This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings. *United States Banknote Co. v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990). Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence." *Borough of Coaldale v. Unemployment Compensation Board of Review*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

Further, in UC cases, "it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. Cmwlth. 1985)). "The Board is also empowered to resolve conflicts in the evidence." *Serrano*, 149 A.3d at 439. "'Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review.'" *Id.* (quoting *Peak*, 501 A.2d at 1388). "The Board is the arbiter of credibility and is free to accept or reject the testimony of any witness in whole or in part." *Ackley v. Unemployment Compensation Board of Review*, 166 A.3d 565, 568 (Pa. Cmwlth. 2017).

While the Board is empowered to resolve conflicts in the evidence, it may not capriciously disregard evidence. *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). However, capricious disregard of evidence occurs only where the Board "willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Id.* Thus, disturbing the Board's "adjudication for a capricious disregard of evidence is appropriate only where the [Board] has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment." *Id.* at 1263.

Here, when viewing the evidence in the light most favorable to Claimant, as we must because the Board ruled in her favor, *see United States Banknote Co.*, 575 A.2d at 674, there is substantial evidence in the record to support the Board's findings regarding Claimant's voluntary termination of her employment. Claimant testified that she left her job because she "was sexually harassed and assaulted by [her] boss and endured retaliation until [she] couldn't endure it anymore." (N.T. at 6.) More specifically, she testified that at the 2016 Christmas party, Employer's vice president told her he wanted to have sex with her multiple times, licked the back of her neck, ear, and face, and groped her breasts. *Id.* at 7. Claimant stated that after she told the vice president she was not interested he did not sexually harass her again; however, she testified that the vice president retaliated against her by reassigning her to a project manager, Tim Francis, who was "abusive" toward her. *Id.* at 8. Claimant said that every day Francis yelled at her, told her to do something and then told her not to do something, insulted her mannerisms, cursed at her and called her names, compared her to his wife, and told her she was incompetent, stupid, did not know anything, and did not deserve to be paid what she was paid. *Id.* at 9, 11.

Claimant said the treatment did not make sense, was "nonstop torture," and that Francis was not abusive toward other coworkers. *Id.* at 11, 26. Claimant stated

7

that she complained to another project manager, Mike Chorba, Employer's EEO officer, and the vice president, but nothing was done. *Id.* at 8. In fact, she stated that when she complained to the vice president he laughed at her. *Id.* at 9. She testified that Francis's behavior progressively worsened from when she was reassigned after the 2016 Christmas party until she terminated her employment in April 2018. *Id.* Claimant stated that even though she complained to the EEO officer on a daily basis and asked to be assigned to a new supervisor, nothing was done. *Id.* at 10.

Claimant stated that the final work event that caused her to quit occurred on April 6, 2018. *Id.* at 12. Claimant testified that she left work in her company vehicle, as she was permitted to do, and parked the vehicle at Lucky's Sports Bar so that she could go shopping with her friend. *Id.* She stated that she did not go home first to get her personal vehicle because her home was half an hour past where she planned to shop. *Id.* at 13. After parking the company vehicle at Lucky's Sports Bar, Claimant and her friend took the friend's vehicle to go shopping. *Id.* Claimant said that after shopping, the two ate at Lucky's Sports Bar and then Claimant drove the company vehicle home. *Id.* Claimant stated that she often used her company vehicle to complete errands on the way home from work, other employees used company vehicles for the same purpose, and other employees have committed moving violations in company vehicles without being reprimanded or having their vehicles taken away. Claimant also testified that Employer never provided her with a written company vehicle policy regarding the personal use of company vehicles, but that she was told she was permitted to use her vehicle for personal use on her way home from work. *Id.* at 14.

Claimant testified that the morning after shopping, the vice president and Francis began sending her nonstop text messages asking where she was the night before and informing her she was required to turn in the company vehicle. *Id.* Claimant testified that, because she believed she was being unfairly targeted for violating a policy

that did not exist and could not take Francis's unfair treatment of her anymore, she terminated her employment. *Id.* at 16, 25.

Based on the foregoing testimony, we conclude there is "such relevant evidence which a reasonable mind would accept as adequate to support" the Board's findings that Claimant was sexually harassed by Employer's vice president at the 2016 Christmas party and that after Claimant complained she was reassigned to a supervisor who yelled at and belittled her on a regular basis. *See Western & Southern Life Insurance Co.*, 913 A.2d at 335. This testimony also provides substantial evidence to support the Board's findings that Claimant repeatedly complained about Francis's behavior, but no action was taken to remedy his conduct, and that Claimant quit due to the hostile work environment.

Employer argues the Board capriciously disregarded evidence presented at the hearing in reaching its decision. Specifically, Employer contends the Board ignored Chorba's testimony that Claimant never submitted any formal written complaints regarding the hostile work environment and that Francis treated Claimant the same way he treated everyone else. Employer also maintains that the Board ignored the testimony of Marc Shibley, Employer's fleet manager, that his mother, Employer's owner and president, would never tolerate complaints of sexual harassment and that Claimant only quit after being confronted with her company vehicle's tracking information showing that she left Lucky's Sports Bar at 12:15 a.m. on her final day of work, driving 80 miles-per hour. *Id.*

Although Employer attempted to impugn Claimant's testimony regarding the harassing conduct she experienced and instead demonstrate that Claimant actually quit because she was reprimanded for misusing the company vehicle, the Board found Claimant's version of events credible. Indeed, the Board specifically credited Claimant's testimony that she was reassigned to Francis after she complained about the vice president's sexual harassment of her, that Francis regularly yelled at her, belittled

9

her, and called her stupid and incompetent, and that Claimant complained about Francis's conduct to both Employer's vice president and EEO officer, but that they did not address or alleviate the situation. (Board decision at 2.) As the arbiter of credibility, the Board was empowered to credit Claimant's testimony over that of Employer's witnesses and we may not disturb such determinations on appeal. *See Ackley*, 166 A.3d at 568; *Serrano*, 149 A.3d at 439.

Employer argues that the Board capriciously disregarded evidence in reaching its decision; however, it is clear from our review of the record in this case that the Board did not refuse to resolve conflicts in the evidence, fail to make essential credibility determinations, ignore overwhelming evidence without comment, or deliberately disregard competent and relevant evidence. *See Wise*, 111 A.3d at 1262-1263. Rather, the Board merely credited Claimant's testimony regarding Employer's treatment of her and her reason for quitting. While the Board did not make explicit credibility determinations regarding Employer's testimony, given that the Board specifically credited Claimant's testimony, we can infer the Board credited Claimant's testimony over that of Employer's witnesses, to the extent the testimony differed.[3] Likewise, the Board did not make explicit credibility determinations with respect to Employer's witnesses' testimony that Claimant only quit because she was reprimanded

---

[3] Additionally, it is notable that much of Employer's testimony did not conflict with or refute Claimant's testimony. For example, other than challenging Claimant for not filing a formal complaint regarding the vice president's behavior, Employer did not present any evidence to dispute Claimant's testimony that she was sexually harassed and assaulted at the December 2016 Christmas party and retaliated against by being reassigned to Francis. Similarly, while Employer criticized Claimant for not filing a formal complaint regarding Francis's conduct, Chorba acknowledged that Claimant informally complained to him about Francis and that Francis yelled and screamed at everyone daily. (N.T. at 32-33.) Chorba also admitted that he was unaware of any formal complaint process. *Id.* With regard to Employer's allegation that Claimant actually quit because she was reprimanded for her use of the company vehicle, Employer did not present any testimony to explain the parameters of the company vehicle policy or to refute Claimant's testimony that personal use of the company vehicle on the way home from work is permitted and that other employees did not lose driving privileges or receive reprimands for similar behavior.

10

for using the company vehicle. Yet, based on the Board's finding that Claimant quit due to a hostile work environment, we can deduce that the Board credited Claimant's testimony that Employer's reaction to Claimant's use of the company vehicle was the "final straw" of the hostile work environment experienced by Claimant, which finally caused her to quit, and that the Board did not credit the alternate theory, presented by Employer, for why Claimant quit. Accordingly, we are unable to conclude that the Board capriciously disregarded evidence in reaching its decision.

Although Employer does not appear to dispute that the facts, as found by the Board, support its determination that Claimant had a necessitous and compelling reason to voluntarily terminate her employment, we briefly turn to whether the Board's conclusion is supported by the law.

Section 402(b) of the Law provides that an employee shall be ineligible for UC benefits for any week in which he or she voluntarily left his or her employment without a necessitous and compelling reason. 43 P.S. §802(b). Whether a claimant has a necessitous and compelling reason to quit is a conclusion of law that is reviewable by this Court. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 832 (Pa. 1977). The burden to show a necessitous and compelling reason existed to terminate employment rests with the claimant. *Petrill v. Unemployment Compensation Board of Review*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005). An employee who claims to have left employment for a necessitous and compelling reason must prove that (1) circumstances existed which produced a real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment. *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

Sexual harassment can constitute a necessitous and compelling reason to quit under section 402(b) of the Law. *Collier Stone Co. v. Unemployment Compensation Board of Review*, 876 A.2d 481, 484 (Pa. Cmwlth. 2005); *Johnson v. Unemployment Compensation Board of Review*, 725 A.2d 212, 213-14 (Pa. Cmwlth. 1999). For sexual harassment to constitute a necessitous and compelling reason to quit, the claimant must show that he or she acted with common sense and prudence to alleviate the sexual harassment before quitting, unless to do so would have been futile. *Hussey Copper Ltd. v. Unemployment Compensation Board of Review*, 718 A.2d 894, 900 (Pa. Cmwlth. 1998). For example, "[w]here a mechanism exists . . . to deal with problems of sexual harassment, a claimant must make a good faith effort to utilize that mechanism to resolve [his or] her problems" prior to resigning. *Id.* Further, the sexual harassment incident relied upon by the claimant for terminating his or her employment must be the precipitating event for the resignation, meaning the incident must have occurred relatively close in time to the resignation. *See Lumpkins v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 704 C.D. 2012, filed November 9, 2012), slip op. at 5-6;[4] *Hussey Copper Ltd.*, 718 A.2d at 900.

Additionally, on a related note, "profanity in the workplace, abusive conduct and unjust accusation[s] give rise to a hostile work environment that may provide cause of a necessitous and compelling nature to quit." *Western & Southern Life Insurance Co.*, 913 A.2d at 337; *see also Porco v. Unemployment Compensation Board of Review*, 828 A.2d 426, 428 (Pa. Cmwlth. 2003) (holding that "abusive conduct and unjust accusations represent adequate justification to terminate one's employment and that the claimant need not be subjected to such conduct or language indefinitely"); *Willet v. Unemployment Compensation Board of Review*, 429 A.2d

---

[4] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

1282, 1284 (Pa. Cmwlth. 1981) (holding that under the Law, "an employee need not be subjected indefinitely to unjust accusations, abusive conduct or profane language"). However, "a claimant must act in a common sense manner to eliminate the problem so as to avoid quitting." *Western & Southern Life Insurance Co.*, 913 A.2d at 337. Not complaining to management can constitute a failure to exhaust all possible alternatives before quitting. *Id.* In *Willet*, where the claimant was subjected to profanity, verbal ridicule, unjust accusations, and insults to her intelligence over a four-month period by her supervisor, we concluded the claimant had a necessitous and compelling reason to quit. 429 A.2d at 1284.

Here, the Board found that Claimant was sexually harassed at a Christmas party by Employer's vice president and that, after Claimant told the vice president she was not interested, he retaliated against her by reassigning her to a new supervisor with whom she did not get along. (Board F.F. Nos. 2-4.) The Board also found that Claimant's new supervisor regularly yelled at her, belittled her, and called her stupid and incompetent. (Board F.F. No. 5.) Additionally, the Board found that Claimant complained about the situation to another project manager, the EEO officer, and the vice president, but that nothing was done and, in fact, the vice president *laughed* at Claimant. (Board F.F. Nos. 6-7.) Finally, the Board found that Claimant quit due to a hostile work environment. (Board F.F. No. 8.)

Like *Willet*, Claimant was continuously subjected to verbal ridicule, yelling, and insults to her intelligence over a period of a year-and-a-half. Claimant frequently complained to Employer's management and EEO officer, but nothing was done to remedy the situation.[5] Based on these facts, we conclude that (1) circumstances

---

[5] At the hearing and in its brief, Employer assailed Claimant for not submitting a written complaint regarding Francis's behavior and for not reporting his conduct to Employer's president. However, Employer produced no evidence to demonstrate that Employer's policy required Claimant to submit a written complaint and/or report the hostile work environment to Employer's president.

13

existed which produced a real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment. *See Brunswick Hotel & Conference Center, LLC*, 906 A.2d at 660. Thus, we hold that the Board did not err in deciding that Claimant had a necessitous and compelling reason for terminating her employment.

Accordingly, the Board did not err in finding Claimant not ineligible for benefits under section 402(b) of the Law.

_____
PATRICIA A. McCULLOUGH, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kriger Construction, Inc.,  :
               Petitioner  :
                         :  No.  26 C.D. 2019
             v.  :
                         :
Unemployment Compensation  :
Board of Review,  :
               Respondent  :

## ***ORDER***

AND NOW, this 10th day of February, 2020, the December 11, 2018 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge