# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED:  APRIL 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0562-MR

PAUL JASON WALKER                                        APPELLANT

                 ON APPEAL FROM WARREN CIRCUIT COURT
V.                     HONORABLE JOHN R. GRISE, JUDGE
                              NO. 21-CR-00394

COMMONWEALTH OF KENTUCKY                          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant Paul Jason Walker was found guilty by a Warren County jury of multiple sexual crimes against his daughter.  As recommended by the jury, the trial court sentenced Walker to a total of twenty-four years in prison.  Walker brings four issues on appeal.  He claims that the trial court erred by: 1) denying his motion to continue the trial; 2) refusing to strike a certain juror for cause; 3) prohibiting the defense to interrogate the victim on cross-examination about being molested by her grandfather; and 4) allowing the lead detective to comment on Walker's invocation of his Fifth Amendment right against self-incrimination.[1]  Upon review, we affirm the Warren Circuit Court's judgment.

---

[1] Walker also seeks reversal of his conviction based upon cumulative error.  As to the first three errors alleged by Walker, we conclude that the trial court did not abuse its discretion.  As to the fourth and unpreserved error, we conclude that if error occurred, palpable error relief was not warranted.  "We have found cumulative error

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2021, Walker was indicted on multiple counts of sexual abuse against his minor daughter A.W. In January 2022, the trial court scheduled Walker's trial to begin July 19, 2022. On July 12, 2022, Walker filed a motion to continue the trial, indicating he had recently received companion Dependency, Neglect, and Abuse (DNA) cases[2] for Walker's minor children and a review of those cases revealed that A.W. was in counseling from the latter part of 2020 to early 2022. Believing the therapy records would be exculpatory in nature, Walker requested time to receive and review A.W.'s therapy records. After hearing the motion on July 13, 2022, the trial court determined that due to the nature of the psychotherapist/patient privilege, the trial court would receive the records under seal and that it would review A.W.'s counseling records for exculpatory information. On July 15, 2022, the trial court received the counseling records and performed an *in camera* review and, as stated in its order, determined that the records did not contain exculpatory information. The trial court denied Walker's request for production of the counseling records and for continuation of his trial. The four-day trial commenced as scheduled.

During jury selection, one of the potential jurors, Juror 565, informed the trial court and counsel that his sister-in-law worked in the Commonwealth

---

only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). The cumulative error doctrine is not applicable to this case.

[2] The DNA case files were initially received by Walker and provided to the Commonwealth as part of reciprocal discovery.

Attorney's office as a victim's advocate. Juror 565 stated that he did not believe that his sister-in-law's employment would affect his judgment. Walker argued that the sister-in-law's employment with the Commonwealth Attorney created an appearance of impropriety and sufficient grounds for the juror to be stricken for cause. The trial court denied Walker's motion to strike.[3]

A.W. testified about the abuse by her father which began when she was in the fourth grade and continued for years. During trial, Walker advised the trial court that it had a good faith basis to ask A.W. on cross-examination if she had been molested by her grandfather. The basis consisted of A.W.'s sister posting on social media that the grandfather had abused her and A.W. in the past. The grandfather had died in 2018 and was unavailable for questions on the issue. The trial court denied Walker's request to cross-examine A.W. on this issue.

Also during trial, a detective testified about his involvement in the investigation against Walker. As the investigation progressed, the detective determined to contact Walker to interview him. The detective testified: "We

---

[3] In *Floyd v. Neal*, 590 S.W.3d 245 (Ky. 2019), this Court clarified the procedure for preserving the issue of whether the trial court erred by failing to strike a juror for cause. We stated that a litigant must: (1) move to strike the juror for cause and be denied; (2) exercise a peremptory strike on said juror, and show the use of that peremptory strike on the strike sheet, and exhaust all other peremptory strikes; (3) clearly indicate by writing on her strike sheet the juror she would have used a peremptory strike on, had she not been forced to use a peremptory on the juror complained of for cause; (4) designate the same number of would-be peremptory strikes as the number of jurors complained of for cause; (5) the would-be peremptory strikes must be made known to the court prior to the jury being empaneled; and (6) the juror identified on the litigant's strike sheet must ultimately sit on the jury. *Id.* at 252. Upon review of the record, we conclude this issue is properly preserved.

spent the afternoon with the Simpson County Sheriff's office attempting to locate Mr. Walker and the vehicle we were told he was in. We were unsuccessful. When I returned to work, I had a voice mail that Mr. Walker was invoking his rights and would not be providing a statement to me."

The jury found Walker guilty of one count of incest,[4] one count of first-degree rape (victim less than twelve (12) years of age),[5] one count of second-degree rape (victim less than fourteen (14) years of age),[6] one count of second-degree sodomy (victim less than fourteen (14) years of age),[7] two counts of first-degree sexual abuse (victim less than twelve (12) years of age),[8] and two counts of second-degree unlawful transaction with a minor.[9] The jury recommended that Walker serve the sentences for these crimes concurrently. In accordance with that recommendation, the trial court sentenced Walker to prison for a total of twenty-four (24) years.

Walker brings three preserved issues and one unpreserved issue on appeal. The claims of error are addressed in turn.

---

[4] The jury recommended a prison sentence of twenty (20) years.

[5] The jury recommended a prison sentence of twenty-four (24) years.

[6] The jury recommended a prison sentence of twenty (20) years.

[7] The jury recommended a prison sentence of five (5) years.

[8] On each count, the jury recommended a prison sentence of ten (10) years.

[9] On each count, the jury recommended a prison sentence of one (1) year.

**ANALYSIS**

I. **The trial court did not abuse its discretion when it denied Walker's motion to continue the trial.**

Walker's first claim is that the trial court erred by denying his motion to continue the trial so that Walker could examine A.W.'s counseling records. The Commonwealth contends that the trial court did not err by denying the continuance or by denying Walker's request to examine the records. We review the trial court's decision for an abuse of discretion. *Morgan v. Commonwealth*, 421 S.W.3d 388, 392 (Ky. 2014) (citation omitted). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In his motion to continue his trial, Walker argued that if there was no mention of Walker within the counseling records, then the absence of any mention of him would be exculpatory. Walker further argued that if another perpetrator was mentioned within the records, this would also be exculpatory evidence. As describe above, the trial court concluded that due to the nature of the psychotherapist/patient privilege, it would review the records *in camera* and only upon finding exculpatory information would information in the records be released to counsel. After its review, citing Kentucky Rules of Evidence (KRE) 506 and 507 and *Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003), the trial court entered an order stating that no such exculpatory evidence was contained within the records. The trial court denied Walker's

motion for production of the counseling records and motion to continue the trial.

Kentucky Rule of Criminal Procedure (RCr) 9.04 authorizes a trial court to grant a continuance upon motion and sufficient cause shown by either party. As explained in *Snodgrass v. Commonwealth,* 814 S.W.2d 579, 581 (Ky. 1991),[10]

> [w]hether a continuance is appropriate in a particular case depends upon the unique facts and circumstances of that case. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 849, 11 L.Ed.2d 921 (1964). Factors the trial court is to consider in exercising its discretion are: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice. *Wilson v. Mintzes,* 761 F.2d 275, 281 (6th Cir. 1985).

"Identifiable prejudice is especially important. Conclusory or speculative contentions that additional time might prove helpful are insufficient. The movant, rather, must be able to state with particularity how his or her case will suffer if the motion to postpone is denied." *Bartley v. Commonwealth,* 400 S.W.3d 714, 733 (Ky. 2013) (citation omitted).

On appeal, Walker contends that all of the factors to be considered would necessarily lead to the conclusion that granting the continuance was warranted. But particularly, in relation to the trial court reviewing the records *in camera* to determine if Walker's arguments for production of the counseling records were supported, Walker argues that the trial court should have

---

[10] *Overruled on other grounds by Lawson v. Commonwealth,* 53 S.W.3d 534 (Ky. 2001).

continued the trial to ferret out this issue.  Walker further complains that it was impossible for the defense to know if evidence of an alternate perpetrator was actually contained within the counseling records.  Walker asserts that he was substantially prejudiced by the trial court denying his motion to continue and denying the defense access to the counseling records.  Walker asks this Court to reverse and remand this matter so there can be specific determinations made from the counseling records as to whether or not they contained exculpatory evidence.[11]  The Commonwealth counters that Walker fails to explain with any specificity the prejudice he allegedly suffered when the trial court followed the procedure prescribed in *Barroso* and declined his motion for a continuance.

In *Barroso,* this Court concluded that "the [Sixth Amendment's] Compulsory Process Clause affords a criminal defendant the right to obtain and present exculpatory evidence, including impeachment evidence, in the possession of a third party that would otherwise be subject to the psychotherapist-patient privilege."  122 S.W.3d at 562.  The Court explained the two-part inquiry to be used to determine whether the otherwise privileged information may be admitted into evidence.  First, "*in camera* review of a witness's psychotherapy records is authorized only upon receipt of evidence

---

[11] Walker asserts that based on the trial court's other rulings, it was determined to exclude any evidence relating to an alternate perpetrator and it was impossible for the defense to know if such evidence and references were actually contained within the counseling records.  As discussed below, we conclude that the trial court did not abuse its discretion by prohibiting Walker from cross-examining A.W. about being molested by her grandfather and advancing his alternate perpetrator theory when the evidence did not support it.

7

sufficient to establish a reasonable belief that the records contain exculpatory evidence."[12]  *Id.* at 563-64 (citing *Stidham v. Clark,* 74 S.W.3d 719, 727 (Ky. 2002)).  Second, "[i]f the *in camera* inspection reveals exculpatory evidence, *i.e.,* evidence favorable to the accused and material to guilt or punishment, including impeachment evidence, that evidence must be disclosed to the defendant if unavailable from less intrusive sources."  *Id.* at 564 (citations omitted).  Also pertinent to the proper resolution of this case, the *Barroso* Court additionally concluded that when a trial court undertakes a review of psychotherapy records to determine whether the records contain exculpatory evidence, the defendant's constitutional right to a fair trial can be fully protected by an *in camera* inspection by the trial court alone.  *Id.*  However, if discovery is denied and a conviction occurs, the defendant may request that the appellate court review the records and determine if the trial court's ruling was an abuse of discretion.  *Id.*

Here, the trial court received and completed its *in camera* review within three days of Walker filing his motion to continue and three days prior to the scheduled start of Walker's trial.  While Walker brings two claims of error related to this process, the lead complaint appears to be that defense counsel was not able to verify if evidence of an alternate perpetrator was actually contained within the counseling records.  Walker suggests that this Court may

---

[12] In regard to this requirement, here, the trial court implicitly concluded that the "reasonable belief" requirement was met.  The Commonwealth does not dispute that decision in this appeal.

reverse the trial court on this issue and remand so there can be, apparently by the defense, specific determinations made from the counseling records as to whether or not they contained exculpatory evidence. As explained in *Barosso*, here, any relief from the trial court's conclusion that the counseling records did not contain exculpatory evidence will stem from this Court's appellate review of the records.

Upon review, like the trial court, we conclude the records do not contain exculpatory information. Consequently, we conclude that the trial court did not abuse its discretion by not disclosing the counseling records to the defense. And relatedly, with the counseling records providing no basis to delay the trial we conclude the trial court did not abuse its discretion by denying Walker's motion. While Walker complains that the trial court should have continued the trial to ferret out whether the counseling records contained exculpatory information, with timely receipt of the records and timely conclusion that the records did not contain exculpatory information, the complaint is without merit. As the Commonwealth points out, with the trial court ruling that the counseling records were inadmissible, Walker went to trial in exactly the same position that he was in before he filed his motion for a continuance, and he has failed to explain how he was prejudiced by the trial court's decision.

## II. The trial court did not abuse its discretion when it did not strike Juror 565 for cause.

Walker's second claim is that the trial court erred when it refused to strike Juror 565, a brother-in-law to a victim's advocate working at the Commonwealth Attorney's office, for cause. The Commonwealth argues that

9

the trial court did not err. The trial court's decision is reviewed using the abuse of discretion standard. *Adkins v. Commonwealth*, 96 S.W.3d 779, 795 (Ky. 2003).

RCr 9.36(1) establishes the standard by which the trial court decides whether a juror must be excused for cause. It states: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." As explained in *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 194 (Ky. 2017), the rule does not require a finding by the trial court that the juror has the *actual* ability to render a fair and impartial verdict, instead, Rule 9.36(1) mandates the removal of a juror if there is merely "a reasonable ground to believe" that he cannot render a fair and impartial verdict.

Walker advocated striking Juror 565 for cause because his familial relationship with a Commonwealth Attorney victim's advocate created an appearance of impropriety. Here, Walker also cites a factual similarity in *Ordway v. Commonwealth*, 391 S.W.3d 762 (Ky. 2013), as supporting his argument that the trial court erred when it did not strike Juror 565 for cause.

In *Ordway*, the sister of Juror 5091 was the victim's advocate. *Id.* at 781. The victim's advocate was assigned to aid, assist, and comfort the family members of the deceased victims in Ordway's case. *See id.* at 782. This Court explained that

> "[g]enerally, the victim's advocate in a criminal case tends to be viewed as favoring, on the victim's behalf, retribution against the defendant, and thus is generally allied with the interests of the

10

prosecutors; the victim's advocate functions as a liaison between the victim's family and the prosecutors. This close association by a prospective juror's sister with an important participant in *the very case being tried* compels that the juror be stricken for cause."

*Id.* at 782.

Walker asserts that the only difference between the fact pattern in *Ordway* and his case is the victim's advocate was the sister, as opposed to a sister-in-law, of the juror in issue. However, the Commonwealth argues that it is clear that what was important to the *Ordway* Court in its determination was the sister's involvement in Ordway's case. In relation to that argument, the Commonwealth points out that in this case, during the bench conference, the Commonwealth definitively stated that Juror 565's sister-in-law had not had any contact with the victim in this case, and as for Juror 565, he stated that he did not know if his sister-in-law was involved in the case or not.

Walker cites *Ward v. Commonwealth*, 695 S.W.2d 404 (Ky. 1985), to rebut the Commonwealth's arguments that Juror 565's answers to questions in *voir dire* lead to the conclusion that he could be fair. In *Ward*, the trial court did not excuse, for cause, three jurors who were related to the Commonwealth's Attorney: an ex-brother-in-law, a distant cousin and a "sort of an uncle." *Id.* at 407. The *Ward* Court described the lens for viewing questions about close relationships, holding that "[I]rrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims

11

or witnesses." *Id.* (quoting *Commonwealth v. Stamm,* 429 A.2d 4, 7 (Pa. Super. Ct. 1981)) (alteration original). Accordingly, the *Ward* Court stated that "[o]nce that close relationship is established, without regard to protestations of lack of bias, the court should sustain a challenge for cause and excuse the juror." *Id.* Applying the close relationship principle, the *Ward* Court viewed the trial court's refusal to dismiss the uncle for cause as error, but not the ex-brother-in-law or the distant cousin. *See id.*

As *Ward* exemplifies, not all family relationships are close family relationships for which the likelihood of prejudice should be presumed. We do not view *Ward* as automatically disqualifying Juror 565 based upon his sister-in-law serving as a victim advocate for the Commonwealth Attorney, either family or situational wise. "To determine whether a reasonable ground existed to doubt the challenged juror's ability to render a fair and impartial verdict, the trial court 'must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor.'" *Sturgeon,* 521 S.W.3d at 196 (quoting Sluss v. Commonwealth, 450 S.W.3d 279, 282 (Ky. 2014)). Juror 565 indicated that he did not believe that his sister-in-law's employment at the Commonwealth's Attorney's office would affect his judgment. Furthermore, there was no indication that Juror 565 had any prior knowledge of the case or no response that he could not be a fair and impartial juror. We conclude that the trial court did not abuse its discretion by refusing to strike potential Juror 565 for cause.

12

**III.** **The trial court did not abuse its discretion by refusing to allow defense counsel to cross-examine the victim about being molested by her grandfather.**

Walker's third claim is that the trial court erred by prohibiting the defense to interrogate A.W. on cross-examination about being molested by her grandfather. The Commonwealth disagrees with Walker. The trial court's ruling with respect to the admission of evidence will not be reversed unless the trial court abused its discretion. *Commonwealth v. King*, 950 S.W.2d 807, 809 (Ky. 1997) (citing *Simpson v. Commonwealth*, 889 S.W.2d 781 (Ky. 1994)).

Based upon a social media post in which A.W.'s sister stated that both she and A.W. had been molested by their grandfather, defense counsel sought to cross-examine A.W. about the molestation and present evidence of an alternate perpetrator. After a hearing on the issue, the trial court disallowed any questioning regarding the grandfather under KRE 412, the rape-shield law.

During the hearing, A.W. testified that when her grandfather abused her, his fingers never went inside of her vagina. Instead, he would rub the outside of her vagina until she was raw. Additionally, other witnesses, A.W.'s sister, who was present during the abuse, and A.W.'s mother and brother, whom A.W. had told about the abuse, could not testify that they witnessed the grandfather penetrating A.W.'s vagina or that A.W. had told them that this had occurred. The trial court ruled that because there was no evidence that the grandfather could have been the source of the vaginal penetration, any testimony about the grandfather was irrelevant and inadmissible.

13

Walker argues on appeal that cross-examination on whether A.W. had been molested by her grandfather was necessary, as A.W.'s medical doctor was going to testify that A.W.'s hymen had been penetrated and it was further anticipated that A.W. would testify that she had never had any sexual relations with anyone else, leading the jury to conclude that A.W.'s ruptured hymen must have been caused by Walker when it could have been caused by her grandfather. Walker argues that such evidence was admissible under KRE 412(b)(1)(A) to prove that someone other than Walker was the source of A.W.'s injury.

Under KRE 412, evidence offered to prove that any alleged victim engaged in other sexual behavior is generally inadmissible. KRE 412(a)(1). However, in a criminal case, evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence may be admissible. KRE 412(b)(1)(A). While Walker emphasizes that the cross-examination of A.W. should have been allowed because A.W.'s ruptured hymen *could* have been caused by the grandfather, the Commonwealth points out that Walker does not identify any medical testimony which indicated that being rubbed raw on the outside of her vagina by her grandfather could have caused an injury to A.W.'s hymen. Upon review, with no evidence of specific instances of sexual behavior proving that the grandfather was the source of hymen penetration, we cannot conclude that the trial court abused its discretion when it ruled that any testimony about the grandfather was irrelevant and inadmissible. Simply put,

14

Walker's conjecture that A.W.'s hymen injury could have been caused by her grandfather cannot satisfy the "specific instances" requirement of KRE 412(b)(1)(A).

## IV. Even if the trial court erred by allowing the detective to comment on Walker's invocation of his Fifth Amendment right, palpable error relief is not warranted.

Walker's fourth and unpreserved[13] claim is that the lead detective made an impermissible comment during the detective's testimony about Walker's decision to assert his Fifth Amendment rights. The Commonwealth counters that there was no error, but if so, palpable error relief is not warranted.

> Under Criminal Rule 10.26, an unpreserved error may only be corrected on appeal if the error is both "palpable" and "affects the substantial rights of a party" to such a degree that it can be determined "manifest injustice resulted from the error." For error to be palpable, "it must be easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky. 2006). The rule's requirement of manifest injustice requires "showing . . . [a] probability of a different result or error so fundamental as to threaten a defendant' s entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006). Or, as stated differently, a palpable error is where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4. Ultimately, "[m]anifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding." *Kingrey v. Commonwealth,* 396 S.W.3d 824, 831 (Ky. 2013) (quoting *McGuire v. Commonwealth,* 368 S.W.3d 100, 112 (Ky. 2012)).

*Young v. Commonwealth,* 426 S.W.3d 577, 584 (Ky. 2014).

---

[13] Walker advocates that this claim is preserved for review by his motion for a new trial. However, without a RCr 9.22 contemporaneous objection during the detective's testimony, we do not view the claim as preserved. *See Bell v. Commonwealth*, 473 S.W.2d 820, 821 (Ky. 1971); *Meece v. Commonwealth*, 348 S.W.3d 627, 684 n.33 (Ky. 2011).

Here, the detective testified that while he was trying to locate Walker during his investigation of the charges, the detective received a voice mail which stated that "Mr. Walker was invoking his rights and would not be providing a statement to me." Walker argues that *Commonwealth v. Hall*, 862 S.W.2d 321, 323 (Ky. 1993), and *Green v. Commonwealth*, 815 S.W.2d 398, 400 (Ky. 1991), cases addressing post-arrest, pre-*Miranda*[14]-warnings situations, seem to indicate that the Commonwealth may never introduce evidence of a defendant's silence in its case-in-chief, whether such evidence is introduced intentionally or inadvertently.

*Baumia v. Commonwealth*, 402 S.W.3d 530, 538 (Ky. 2013), a pre-arrest, pre-*Miranda* warning case, discusses the implications of *Hall* and *Green* which Walker sets forth in his argument. *Baumia* explains that

> both the Fifth Amendment and Section 11 [of the Kentucky Constitution] state that an individual cannot be "compelled" to incriminate herself.[15] Thus, official compulsion must be present in order for the privilege against self-incrimination to attach. *See Jenkins* [*v. Anderson*]*,* 447 U.S. [231,] 241 [(1980)], 100 S. Ct. 2124 (Stevens, J., concurring) ("[T]he privilege against compulsory self-incrimination is simply irrelevant to a citizen's decision to remain silent when he is under no official compulsion to speak.").

402 S.W.3d at 538.

With regard to whether there was official compulsion for Walker to incriminate himself, it is not disputed by the parties that Walker was not in custody and that Walker had not been informed of his rights. During his

---

[14] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[15] The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.

16

testimony, the detective testified that he accompanied the social worker to Walker's residence to provide security during the initial investigation of the allegations and that a criminal case was not opened on Walker until shortly before the detective received the voicemail and while he was still attempting to locate Walker. Walker does not argue or point to any part of the record to show that he was *Mirandized* before he left the voicemail that the detective referred to.

The circumstances of this case may be viewed as supportive of the conclusion that because the detective's testimony was not a comment on Walker's silence after he had been arrested and *Mirandized*, it was not protected from being commented on by the Commonwealth. But even if the testimony was in error, we conclude that the detectives brief, isolated comment does not warrant palpable error relief. *See Hunt v. Commonwealth*, 304 S.W.3d 15, 37 (Ky. 2009) ("[W]e are not persuaded that the single reference to Hunt's invoking his right to remain silent resulted in palpable error."). Given the evidence before the jury, it is clear that the jury's verdict would have been the same in the absence of the detective's statement and the error was not so fundamental as to threaten Walker's entitlement to due process of law. *Martin*, 207 S.W.3d at 3.

## CONCLUSION

For the foregoing reasons, the Warren Circuit Court's judgment is affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert and Nickell,

JJ., concur.  Thompson, J., concurs in result only.


COUNSEL FOR APPELLANT:

Matthew James Baker


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Jenny Lynn Sanders
Assistant Attorney General